# UNITED STATES DISTRICT COURT
for the
Eastern District of Missouri

| | |
|---|---|
| **In the Matter of the Search of** ) <br> THE PREMISES LOCATED AT 208 N. 9TH ST. APT. ) <br> 506, ST. LOUIS, MISSOURI 63101, FURTHER ) <br> DESCRIBED AS AN APARTMENT ON THE FIFTH ) <br> FLOOR INSIDE THE PAUL BROWN LOFT ) <br> APARTMENTS, WITH "506" AFFIXED TO THE ) <br> FRONT DOOR, WHICH IS A WOOD-COLORED DOOR ) <br> WITH WHITE TRIM, ON A GREEN PLACARD WITH ) <br> BLACK TEXT. | Case No. 420-mj-6296 PLC <br><br> SUBMITTED TO THE COURT AND <br> SIGNED BY RELIABLE ELECTRONIC MEANS |

## APPLICATION FOR A SEARCH WARRANT

I, __Callon Andrews__, a federal law enforcement officer or an attorney for the government request a search warrant and state under penalty of perjury that I have reason to believe that on the following property:
**THE PREMISES LOCATED AT 208 N. 9TH ST. APT. 506, ST. LOUIS, MISSOURI 63101, FURTHER DESCRIBED AS AN APARTMENT ON THE FIFTH FLOOR INSIDE THE PAUL BROWN LOFT APARTMENTS, WITH "506" AFFIXED TO THE FRONT DOOR, WHICH IS A WOOD-COLORED DOOR WITH WHITE TRIM, ON A GREEN PLACARD WITH BLACK TEXT.**

located in the __EASTERN__ District of __MISSOURI__, there is now concealed

controlled substances and/or United States currency.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ✓ evidence of a crime;
- ✓ contraband, fruits of crime, or other items illegally possessed;
- ✓ property designed for use, intended for use, or used in committing a crime;
- ❑ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 21, U.S.C., §§ 846, 841(a)(1) | Conspiracy to possess with intent to distribute controlled substance(s) |

The application is based on these facts:
SEE ATTACHED AFFIDAVIT WHICH IS INCORPORATED HEREIN BY REFERENCE.

- ✓ Continued on the attached sheet.
- ❑ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

**I state under the penalty of perjury that the foregoing is true and correct.**

*/s/ Callon Andrews*

Callon Andrews, Special Agent, DEA
*Printed name and title*

**Sworn to, attested to, and affirmed before me via reliable electronic means pursuant to Federal Rules of Criminal Procedure 4.1 and 41.**

Date: 12/02/2020

City and State: St. Louis, MO

*Patricia L Cohen*
*Judge's signature*

Patricia L. Cohen, U.S. Magistrate Judge
*Printed name and title*

SAUSA: Karelia S. Rajagopal

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| **THE PREMISES LOCATED AT 208 N. 9TH ST. APT. 506, ST. LOUIS, MISSOURI 63101, FURTHER DESCRIBED AS AN APARTMENT ON THE FIFTH FLOOR INSIDE THE PAUL BROWN LOFT APARTMENTS, WITH "506" AFFIXED TO THE FRONT DOOR, WHICH IS A WOOD-COLORED DOOR WITH WHITE TRIM, ON A GREEN PLACARD WITH BLACK TEXT.** | Case No.   420-mj-6296 PLC<br><br>**Filed Under Seal** |

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Callon Andrews, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

I am a Special Agent with the Drug Enforcement Administration (DEA), and have reason to believe that on the premises known as:

**THE PREMISES LOCATED AT 208 N. 9TH ST. APT. 506, ST. LOUIS, MISSOURI 63101, FURTHER DESCRIBED AS AN APARTMENT ON THE FIFTH FLOOR INSIDE THE PAUL BROWN LOFT APARTMENTS, WITH "506" AFFIXED TO THE FRONT DOOR, WHICH IS A WOOD-COLORED DOOR WITH WHITE TRIM, ON A GREEN PLACARD WITH BLACK TEXT. (THE PREMISES IS MORE PARTICULARLY DESCRIBED IN THE PHOTOGRAPH HERETO ATTACHED AS "ATTACHMENT A"),**

which is located within St. Louis, Missouri, in the Eastern District of Missouri, there is now concealed certain property, namely,

**See the attached list entitled "Attachment B, Items to be Seized,"**

which constitutes evidence of the commission of a criminal offense or which is contraband, fruits of the crime, or things otherwise criminally possessed, or which is designed or intended for use or which is or has been used as the means of an offense, in violation of Title 21, United States Code, Sections 841(a)(1) and 846 (hereinafter collectively referred to as the target offenses). The facts to support the issuance of a Search Warrant are as follows:

1.   I, Callon Andrews, am a Special Agent with the Drug Enforcement Administration (DEA) currently assigned to the Fairview Heights Resident Office.  I have been a

Special Agent with the DEA since May of 2016. From August of 2014 through April of 2016, I was a Police Officer employed by the University of Wisconsin – Madison Police Department. During my tenure with the DEA, I have participated in numerous drug investigations involving the manufacture, transportation, and distribution of controlled substances. These investigations have resulted in the seizure of controlled substances and proceeds from the sale of controlled substances, as well as arrests and convictions of drug traffickers. I am familiar with and have utilized normal methods of investigation, including but not limited to physical and electronic surveillance, questioning of witnesses, the use of search and arrest warrants, the use of informants, the use of pen registers, analysis of telephone records, the utilization of undercover agents, and the use of court-authorized wire intercepts.

2. I am part of an experienced team of narcotics investigators currently investigating the criminal activities of Terrence **THOMPSON** and others. This investigation has established that **THOMPSON** and others are engaged in an ongoing conspiracy to distribute controlled substances in violation of Title 21, United States Code, Sections 841(a)(1) and 846, the target offenses.

3. The statements in this affidavit are based in part on my own investigation, as well as information provided by other law enforcement officials, and on my experience, training and background. Since this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation.

## LOCATION TO BE SEARCHED

4. The following is in support of a search warrant for the following premises:

**TARGET LOCATION: 208 N. 9th St. Apt. 506, St. Louis, Missouri 63101** (hereinafter referred to as the **TARGET LOCATION**) is an apartment located inside a residential apartment complex named "The Paul Brown Loft Apartments," (hereinafter referred to as "the apartment complex"), particularly described in the photographs hereto attached as "ATTACHMENT A,"

located within the Eastern District of Missouri. The apartment complex has a tan exterior and multiple windows with "THE PAUL BROWN LOFT APARTMENTS" and "PAUL BROWN BUILDING 208" affixed over the front door on the outside of the apartment complex. Apartment Number 506 is located on the fifth floor inside the apartment complex, and the numbers "506" are affixed to the **TARGET LOCATION's** front door, which is a wood-colored door with white trim, on a green placard with black text.

5. The facts to support the issuance of a Search Warrant for the **TARGET LOCATION** are as follows:

### INVESTIGATION AND PROBABLE CAUSE

6. The Fairview Heights Resident Office of the DEA began investigating **THOMPSON** and his drug trafficking activities after learning about them from a confidential source (hereinafter "CS#1").[1]

7. In July 2020, members of the DEA Fairview Heights Resident Office initiated an investigation into the drug distribution activities of **THOMPSON**, occurring in the St. Louis, Missouri area and the Southern District of Illinois.

8. CS#1 informed your affiant that he/she had purchased crystal methamphetamine from an individual known to him/her as "T" at various locations throughout the greater St. Louis,

---

[1] Agents initiated this investigation based on information from CS#1. CS#1 was arrested for distribution of crystal methamphetamine and possession of crystal methamphetamine in July of 2020 in Granite City, Illinois, which is located in the Southern District of Illinois. CS#1 agreed to cooperate for judicial consideration on the aforementioned charges. CS#1 was never financially compensated. CS#1's criminal history includes arrests for fraud, theft, possession of methamphetamine, and methamphetamine manufacturing.  CS#1's criminal history shows he/she has several felony convictions which include: a 1988 conviction for fraud and was sentenced to 30 months' probation; a 2005 conviction for theft and was sentenced to 120 days imprisonment; a 2006 conviction for possession of methamphetamine manufacturing materials and was sentenced to 2 years' probation; a 2007 conviction for possession of methamphetamine and was sentenced to 6 years imprisonment; and a 2013 conviction for methamphetamine manufacturing and was sentenced to 10 years imprisonment.  The information provided by CS#1 in this investigation has been corroborated by surveillance, controlled buys, call detail records, recorded telephone calls, and court-authorized Title III intercepted communications. To date, agents have not found information provided by CS#1 to be false or misleading in this investigation. For these reasons, I consider CS#1 to be reliable.

Missouri area beginning in January of 2020. "T" was later identified as Terrence **THOMPSON**. CS#1 said he/she began purchasing ounce quantities of crystal methamphetamine from **THOMPSON**. CS#1 said when he/she calls **THOMPSON** to arrange a crystal methamphetamine purchase, he/she has always contacts **THOMPSON** via telephone number (314) 320-3934.

9. On August 19, 2020, the Honorable Chief U.S. District Judge Nancy J. Rosenstengel of the Southern District of Illinois authorized the interception of the wire and electronic communications to and from telephone number 314-320-3934, the cellular telephone utilized by **THOMPSON**.

10. On August 24, 2020 at approximately 11:09 a.m., pursuant to a court-authorized Title III intercept of call number 314-320-3934, utilized by **THOMPSON**, investigators intercepted a telephone conversation between **THOMPSON** and an individual identified as Amy Lynch, in which they were coordinating the delivery of crystal methamphetamine.

11. After learning of the intercepted communications between **THOMPSON** and Lynch, agents, including your affiant, responded to the exterior of the **TARGET LOCATION** and established surveillance. At approximately 06:18 p.m., agents observed **THOMPSON** exit the front door of the apartment complex and enter the front passenger seat of Lynch's vehicle. After **THOMPSON** entered the vehicle, Lynch drove around the block of the apartment complex and returned back in front of the apartment complex, where Lynch pulled to the curb.

12. After **THOMPSON** exited the vehicle, agents maintained surveillance of Lynch. Once Lynch drove onto I-70 westbound, agents activated their emergency equipment. Lynch exited I-70 onto Goodfellow Blvd, discarded a plastic bag from the front passenger window, and accelerated at a high rate of speed. Agents located the discarded item, which was a clear plastic bag containing suspected crystal methamphetamine. Agents did not pursue Lynch and she was

last seen west bound on I-70. Based on the investigation to date, I believe Lynch received the clear plastic bag containing the suspected crystal methamphetamine from **THOMPSON.**

13. The suspected crystal methamphetamine, which weighed approximately 307.5 gross grams, was seized and sent to the DEA laboratory for analysis. To date, agents have not received an analysis of the drug. However, based on agents' training and experience, the suspected crystal methamphetamine appeared consistent with crystal methamphetamine seized during prior investigations.

14. On August 27, 2020, at approximately 7:00 p.m., agents intercepted a Title III communication between **THOMPSON** and an individual identified as Anthony Brabec, who investigators believe to be a crystal methamphetamine customer of **THOMPSON's**. The following is the conversation between **THOMPSON** and Brabec identifying the **TARGET LOCATION**:

| | | |
|---|---|---|
| **THOMPSON**: | | Hello? |
| BRABEC: | | I found a spot on ninth… |
| **THOMPSON**: | | Come upstairs. |
| BRABEC: | | Come upstairs? Alright. |
| **THOMPSON**: | | Yeah, I don't want to come down there. |
| BRABEC: | | Come through the building and come up? |
| **THOMPSON**: | | I'm in the Paul Brown Lofts. |
| BRABEC: | | Alright. So where do I go? |
| **THOMPSON**: | | In the big door. |
| BRABEC: | | Alright. In the big door and then go where? |
| **THOMPSON**: | | You hit the big box and press star 0056. |
| BRABEC: | | Star 0056. Alright, I got you. |
| … | | |
| **THOMPSON**: | | Pound 0056. |
| … | | |
| **THOMPSON**: | | Come to the fifth floor. |
| BRABEC: | | Fifth? You said fifth floor? |
| … | | |
| BRABEC: | | I'm on the fifth… |
| **THOMPSON**: | | Come to 506. |
| BRABEC: | | 506… to the left or the right? |
| **THOMPSON**: | | I'm going to give you this, man. Don't really do too much talking 'cause I got company. You know what I'm saying? |
| BRABEC: | | I got you. |
| **THOMPSON**: | | I need this bag back. This the only good bag I got left. |

    BRABEC:    Okay.

  15.  On December 1, 2020, at approximately 9:43 a.m., CS#1 contacted **THOMPSON**, via telephone number 314-320-3934. **THOMPSON** asked CS#1, "How you lookin' on cash wise? You got anything lined up?" CS#1 informed **THOMPSON** that he/she had enough for a "half." **THOMPSON** replied, "Okay, so I'm going to give you a whole one." Based on training and experience, when CS#1 stated "half," CS#1 was referring to one half pound of crystal methamphetamine and when **THOMPSON** said "whole one," he was referring to one pound of crystal methamphetamine. Later at approximately 10:47 a.m., **THOMPSON** contacted the CS#1 via the same telephone number and instructed CS#1 to meet him at the "Citygarden [Sculpture] Park," which is one block south of the **TARGET LOCATION**.

  16.  On the same date, prior to the controlled drug purchase, agents, including your affiant, met with CS#1. Your affiant provided CS#1 with undercover audio/video recording devices to capture the transaction and $2,500 in Official Advanced Funds (OAF) to purchase approximately one pound of crystal methamphetamine. Agents, including your affiant, also searched both CS#1's person and CS#1's vehicle for contraband or other controlled substances, with negative results. At approximately 11:29 a.m., CS#1 left the meet location and traveled to meet **THOMPSON** in St. Louis, Missouri, followed by surveillance.

  17.  At approximately 11:36 a.m., CS#1 arrived at the Citygarden Sculpture Park in St. Louis, Missouri. At approximately 11:38 a.m., agents observed **THOMPSON** exit the parking garage located underneath the **TARGET LOCATION** onto Pine Street in a silver Infiniti sedan, bearing Missouri vehicle registration LF9J1D.[2] Investigators observed **THOMPSON** in the silver Infiniti sedan drive past CS#1's vehicle. CS#1 followed **THOMPSON** in the silver Infiniti sedan to a parking lot located at 405 N. 11th St., St. Louis, Missouri, where both vehicles

---

[2] Missouri vehicle registration LF9J1D is registered to Terrence **THOMPSON** at 10 Garnier Ct., Florissant, Missouri.

parked.  At approximately 11:45 a.m., investigators observed CS#1 exit his/her vehicle and enter the passenger seat of **THOMPSON's** silver Infiniti sedan.  At approximately 11:49 a.m., CS#1 exited **THOMPSON's** vehicle.  Agents, including your affiant, maintained surveillance of CS#1 following the controlled purchase until agents met with CS#1 at a neutral location.

18.     After the controlled drug purchase, CS#1 met with agents, including your affiant, at an undisclosed meet location and gave your affiant the suspected crystal methamphetamine and recording devices.  CS#1's person and CS#1's vehicle were searched by investigators for contraband, with negative results.  CS#1 informed your affiant that during the controlled purchase, **THOMPSON** placed the crystal methamphetamine into one of CS#1's bags located in the vehicle in exchange for the $2,500 OAF.  I later reviewed the audio and video recording of the meeting between **THOMPSON** and CS#1.  I observed that **THOMPSON** was the individual in the silver Infiniti sedan and also that **THOMPSON** took the $2,500 OAF and counted it while in the vehicle.

19.     Agents also maintained surveillance of **THOMPSON** in the silver Infiniti sedan.  At approximately 11:58 a.m., **THOMPSON** arrived at Nephew's Grille located at 742 S. 4th St., St. Louis, Missouri and appeared to pick up food.  At approximately 12:32 p.m., agents observed **THOMPSON** depart Nephew's Grille and then drive into the parking garage located underneath the **TARGET LOCATION**.

20.     Investigators verified the garage located underneath the **TARGET LOCATION** is accessible directly from the **TARGET LOCATION** without exiting the apartment complex.

21.     The suspected one pound of crystal methamphetamine was seized and sent to the DEA laboratory for analysis.  To date, agents have not received an analysis of the drug.  However, based on agents' training and experience, the suspected crystal methamphetamine appeared consistent with crystal methamphetamine seized during prior investigations.

22.     On December 2, 2020, your affiant sent a subpoena to Ameren, a utilities

company located in St. Louis, MO, regarding the account holder for the **TARGET LOCATION**. Ameren responded with information that Terrence **THOMPSON**, bearing a social security number with the last four digits of 8272, is the account holder for the **TARGET LOCATION**. The target of this investigation, **THOMPSON**, has social security number 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.

23. Based on the above information, including learning **THOMPSON** commonly keeps crystal methamphetamine inside his residence, I believe **THOMPSON** uses the **TARGET LOCATION** to distribute methamphetamine in the Eastern District of Missouri. I believe **THOMPSON** possesses, at times, methamphetamine at the **TARGET LOCATION**. I also believe **THOMPSON** possesses proceeds from the sale of methamphetamine at the **TARGET LOCATION**.

24. Based upon the investigative team's experience and our participation in other investigations involving individuals involved in the large-scale drug trafficking and money laundering, I know the following:

   a. It is common for large-scale dealers to secrete contraband, proceeds of drug sales, and records of drug transactions in their residence or other buildings under their control.

   b. Drug traffickers frequently keep near at hand, in their residence or other buildings under their control, paraphernalia for packaging, cutting, weighing and distributing of drugs. These paraphernalia include, but are not limited to scales, plastic bags, and cutting agents.

   c. Drug traffickers maintain books, records, receipts, notes, ledgers, airline tickets, computer hard drives and disk records, money orders and other papers relating to the transportation, ordering, sale and distribution of controlled substances. Drug traffickers commonly "front" (provide drugs on consignment) drugs to their clients. The aforementioned books, records, receipts, notes, ledgers, etc. are maintained where the drug traffickers have ready access to them, specifically in their residence or in other buildings under their control.

        d.        Drug traffickers take or cause to be taken photographs of them, their associates, their property and their product. These traffickers frequently maintain these photographs in their residence or other buildings under their control.

        e.        Persons involved in large-scale drug trafficking conceal in their residence or other buildings under their control large amounts of currency, precious metals, jewelry, and financial instruments, including, but not limited to, stocks and bonds, papers, titles, deeds and other documents reflecting ownership of vehicles and property utilized in the distribution of drugs or which are proceeds from the distribution of drugs.

        f.        When drug traffickers amass large proceeds from the sale of drugs that the drug traffickers attempt to legitimize these profits. I know that to accomplish these goals, drug traffickers utilize financial institutions, including but not limited to, foreign and domestic banks and their attendant services, securities, cashier's checks, money drafts, letters of credit, brokerage houses, real estate, shell corporations and business fronts. They maintain record of these transactions in their residence or other buildings under their control.

        g.        Drugs are frequently transported in bulk to St. Louis, Missouri from other states and/or countries. It is common for drug traffickers to travel to major distribution centers to purchase drugs and/or to arrange for their distribution elsewhere in the United States. After purchasing drugs, these drug traffickers will transport or cause to be transported, drugs to the areas in which they will distribute the drugs. The methods of transportation include, but are not limited to, commercial airlines, private airlines, rental automobiles, private automobiles, and government and contract mail carriers. Records of their travel are frequently kept in their residence or other buildings under their control.

        h.        Evidence of occupancy and residence including, but not limited to utility and telephone bills, canceled envelopes, rental or lease agreements, and keys, is relevant evidence in narcotics prosecutions.

i. Drug traffickers commonly maintain telephone bills, invoices, packaging, cellular batteries and/or charging devices, cancelled checks or receipts for telephone purchase/service; cellular and/or landline telephones; digital and/or alphanumeric text (two-way) pagers; computers capable of e-mail and/or chat-room communication, answering machines; address and/or telephone books and papers reflecting names, addresses, and/or telephone numbers of sources of supply, of customers, and/or evidencing association in fact with persons known to traffic in controlled substances or to facilitate such trafficking. These records are maintained where drug traffickers have ready access to them, specifically, in their residence or in other buildings under their control.

Therefore, I believe **THOMPSON** possesses evidence of the target offenses and seek to search for the aforementioned evidence at the **TARGET LOCATION**.

*Callon Andrews*
Callon Andrews
Special Agent
Drug Enforcement Administration

Subscribed and sworn to before me this __2nd__ day of December 2020.

*Patricia L. Cohen*
HON. PATRICIA L. COHEN
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF MISSOURI

## ATTACHMENT A

**THE PREMISES LOCATED AT 208 N. 9TH ST. APT. 506, ST. LOUIS, MISSOURI 63101, FURTHER DESCRIBED AS AN APARTMENT ON THE FIFTH FLOOR INSIDE THE PAUL BROWN LOFT APARTMENTS, WITH "506" AFFIXED TO THE FRONT DOOR, WHICH IS A WOOD-COLORED DOOR WITH WHITE TRIM, ON A GREEN PLACARD WITH BLACK TEXT.**

Photograph of the exterior of the building "The Paul Brown Loft Apartments:



Photograph of the front door of Apartment 506:



## ATTACHMENT B

### Items to be Seized

1. Methamphetamine and other controlled substances;

2. Paraphernalia for packaging, cutting, weighing and distributing controlled substances, including, but not limited to, scales, baggies, and spoons;

3. Books, records, receipts, notes, ledgers, and other papers relating to the transportation, ordering, purchasing, and distribution of controlled substances;

4. Telephone bills, invoices, packaging, cellular batteries and/or charging devices, canceled checks or receipts for telephone purchase/service; address and/or telephone books and papers reflecting names, addresses, and/or telephone numbers of sources of supply, of customers, and/or evidencing association with persons known to traffic in controlled substances or to facilitate such trafficking;

5. Photographs, in particular photographs of co-conspirators, of assets, and/or of controlled substances;

6. United States Currency, precious metals, jewelry, and financial instruments, including, but not limited to, stocks and bonds, papers, titles, deeds and other documents reflecting ownership of vehicles and property utilized in the distribution of cocaine, or which are proceeds from the distribution of methamphetamine;

7. Books, records, receipts, pay stubs, employment records, bank statements and records, money drafts, letters of credit, money order and cashier's checks receipts, passbooks, bank checks and other items evidencing the obtaining, secreting, transfer and/or concealment of assets and the obtaining, secreting, transfer, concealment and/or expenditure of money;

8. Papers, tickets, notes, schedules, receipts and other items relating to travel or transportation, including, but not limited to, travel to and from St. Louis, Missouri and elsewhere;

9. Any and all records or documents evidencing possession, use, or ownership of the premises to be search or property to be seized, including but not limited to, utility, telephone and internet service bills, cancelled envelopes, mail, rental payments, or housing agreements;

10. Firearms and/or weapons;

11. Cellular telephones; and

12. Security systems, cameras, cables, recording devices, monitors, and other video surveillance equipment.